UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VLADIMIR MIKHOV, ) <br> ANGELA MIKHOV, ) <br> COMMERCIAL AND RESIDENTIAL ) <br> CONSTRUCTION SERVICES, LLC, ) <br> ) <br> Defendants. ) | No. 1:22-cv-01321-SEB-DLP |

**ORDER ON THE PARTIES' MOTIONS REGARDING REMOVAL AND/OR REFERRAL OF THIS PROCEEDING TO THE BANKRUPTCY COURT**

After the Government commenced this civil suit against the Defendants seeking to reduce Defendants' federal income tax liabilities to judgment pursuant to 26 U.S.C. § 7402, Defendants attempted to remove it to our Bankruptcy Court based on their anticipatory defense that these claims have previously been discharged in bankruptcy. In response, the Government filed a motion requesting that the Court declare the Defendants' attempted removal void. The Defendants did not respond directly to this motion, filing instead a separate motion asking the Court to confirm that this matter has been referred to the Bankruptcy Court; alternatively, if the matter has not been referred, they request the issuance of an order of referral forthwith. We address these motions[1] in

---

[1] On November 9, 2022, Defendants filed another motion that: (1) requests the Court confirm referral of this proceeding to the Bankruptcy Court or, alternatively, refer the proceeding to the Bankruptcy Court, and (2) moves to dismiss Count II pursuant to Federal Rule of Civil

1

turn, concluding, for the reasons explicated below, that jurisdiction over this proceeding in the District Court should continue.

## I. PROCEDURAL BACKGROUND

On April 20, 2017, Defendants Vladimir Mikhov and Angela Mikhov filed a Chapter 7 bankruptcy petition in this district for which they received a discharge on December 14, 2017. Five years thereafter, on July 5, 2022, the Government commenced this lawsuit initially only against the Mikhovs, thereafter amending it to add claims against Commercial and Residential Constructions Services, LLC ("C&R"). C&R is a business owned by Ilona Mikhov, the Mikhovs' daughter.[2] Count I of the Amended Complaint is based on 26 U.S.C. § 7402 and seeks an order from the Court to reduce the Mikhovs' federal tax liabilities (plus interest) to judgment. These liabilities cover the tax years 2008 through 2012 as well as tax years 2013 and 2014. The claims in the Government's Amended Complaint for tax years 2008 through 2012 anticipated that the Mikhovs would

---

Procedure 12(b)(6). We deny the first part of this motion regarding the Bankruptcy Court for the same reasons we ultimately deny Defendants' motion at issue here. We will rule on the second part of Defendants' November 9th motion, i.e., their Motion to Dismiss, in due course, following the standard briefing deadlines of Local Rule 7-1(c)(3).

[2] The Government's Amended Complaint filed on September 28, 2022, post-dated the parties' respective motions on whether the Bankruptcy Court has jurisdiction over this case. The language added in the Amended Complaint does not impact our analysis or conclusions on these pending motions.

 C&R was established on October 7, 2015. Ilona Mikhov, the Mikhovs' daughter, was listed as the sole member and registered agent of C&R. While C&R was administratively dissolved by the Indiana Secretary of State on April 5, 2018, it continues to be the titleholder of record of the Property. Angela Mikhov has held herself out as a manager of C&R, and Defendants Mr. and Mrs. Mikhov have accessed funds from a bank account in the name of C&R to pay personal expenses. On information and belief, the Government alleges that C&R has failed to adhere to most if not all corporate formalities.

assert a discharge defense based on their 2017 bankruptcy case filed in this district by claiming that the exception to discharge statute, 11 U.S.C. § 523(a)(1)(C), applies here. However, Section § 523(a)(1)(C) excludes from a bankruptcy discharge any tax debt for which a debtor "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Regarding tax years 2013 and 2014, the Amended Complaint alleges that these liabilities are "excepted from discharge by 11 U.S.C. §§ 523(a)(1)(A) and 523(a)(7) and the penalties are excepted from discharge under 11 U.S.C. § 523(a)(7) because the returns for those tax years were due after three years prior to the petition date (the due date for the 2013 return having been extended to October 15, 2014, and the return having been filed shortly thereafter)." Docket No. 19, at 3. Count II of the Government's Amended Complaint seeks a determination under 26 U.S.C. § 7402 that the Mikhovs' federal tax liens attach to a parcel of real property ("the Property") in Fishers, Indiana, title to which is listed in the name of C&R.

On July 28, 2022, the Mikhovs filed what they entitled a "Notice of Filing of Notice of Removal," referencing their filing of a Notice of Removal in the Bankruptcy Court, and also seeking to "remov[e] this proceeding to the Bankruptcy Court pursuant to 28 U.S.C. § 1452(a)." Docket No. 8, at 1. On August 4, 2022, the Government filed a Motion to Declare that Notice of Removal is Void, arguing that:

> 28 U.S.C. § 1452(a) only provides for the removal of cases from state courts to federal courts (including bankruptcy courts) or possibly from one district to another (although the [Government] submits that is really a transfer of venue under 28 U.S.C. § 1412 and is within the authority of the court in which the case is commenced).

3

Docket No. 9, at 1. The Government contends that a civil action such as this "cannot be removed from a federal district court to the bankruptcy court for the same district, and thus the notice of removal is a legal nullity." *Id.* The Government, citing 28 U.S.C. § 1452(a), argues that the statute "only permits removal 'if the district court has jurisdiction of such claim or cause of action under section 1334 of this title,' but this civil action does not fall within 28 U.S.C. § 1334," which places jurisdiction within the district courts over all bankruptcy cases arising under Title 11. *Id.*; *see* 28 U.S.C. § 1334(a). In addition, "[a] suit to reduce to judgment federal tax assessments does not 'arise under title 11' but rather arises under Title 26, and the fact that dischargeability of the debt is a potential defense does not alter that." Docket No. 9, at 1. Thus, according to the Government, "this civil action is also not subject to referral to the Bankruptcy Court for this district under 28 U.S.C. § 157(a) and matters not already automatically referred by Local Rule 83.8 are not subject to 'removal.'" *Id.* at 1−2; *see* S.D. Ind. L.R. 83-8(a) ("Consistent with 28 U.S.C. § 157(a), all cases and proceedings arising under Title 11 of the United States Code, or relating to a case under Title 11 of the United States Code, are referred to the district's bankruptcy court. This includes all cases removed under 28 U.S.C. §§ 1441(a) or 1452.").

The Mikhovs have not responded directly to the Government's motion; instead, on September 7, 2022, they filed their "Motion to Confirm Referral of Proceeding to Bankruptcy Court or, in the Alternative, to Refer Proceeding to Bankruptcy Court." Their motion asserts that the Court has already automatically referred this lawsuit to the Bankruptcy Court, pursuant to our Local Rules, and requests that we confirm that referral; the Mikhovs, albeit inconsistently, also contend that they possess the right to

4

remove the action to the Bankruptcy Court. "[T]o the extent this proceeding has not already been referred to the Bankruptcy Court," say the Mikhovs, the "Court should expressly make such a referral," arguing that this cause of action both "arises under" and "arises in" the Bankruptcy Code. Docket No. 10, at 15.

## II.   FACTUAL BACKGROUND

In Count I, the Government's Amended Complaint alleges that the Mikhovs' tax liabilities for the years 2008 through 2012 were excepted from discharge in the bankruptcy proceeding, pursuant to 11 U.S.C. § 523(a)(1)(C), because the Mikhovs were accused of willfully attempting to defeat the taxes in one or more of the following ways, including but not limited to:

- Failing to report over $600,000 of their business's gross receipts on their 2008 and 2009 Forms 1040 (combined).
- Selling investment properties in 2014-2016 (after all the assessment of tax against them) for net sale proceeds in excess of $1 million and declining to use any those amounts to pay their past-due federal income tax liabilities.
- Selling investment properties to insiders at a below-market rate.
- Using business bank accounts for personal expenses, including payment of the mortgage on their residence and purchases of airline tickets, fine wines, and expensive clothing.
- Failing to disclose assets, including Individual Retirement Accounts, on their original and first amended bankruptcy schedules.
- Transferring the operation of their business to C&R, of which their daughter is the sole member owner (though continuing to operate that business) in order to avoid IRS collection efforts.
- Not fully paying their taxes through nearly adequate estimated prepayments during each tax year despite having adjusted gross income of $707,013 in 2008, $540,533 in 2009, $381,791 in 2010, $891,920 in 2011, $678,453 in 2012, $342,401 in 2013, and $317,557 in 2014.
- Not paying the already reported and assessed taxes in succeeding years from the similarly more-than-sufficient income year after year.

- Fraudulently transferring funds to One Plus Two LLC to acquire the Property in its name in 2011.
- Causing One Plus Two LLC to fraudulently transfer the Property to Vladimir Mikhov's sister in 2016 even though he owned 99.9% of One Plus Two while his sister owned only 0.1% as described in Count II below.

Docket No. 19, at 3−4. Regarding tax years 2013 and 2014, the Government alleges the Mikhovs' tax liabilities were excepted from discharge under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8), and the penalties from discharge under 11 U.S.C. § 523(a)(7), because of their belated filing of the returns which were due three years prior to the Mikhovs' bankruptcy petition date. Thus, despite proper notice and demand, the Mikhovs failed, neglected, or refused to fully pay the liabilities and, after the application of all abatements, payments, and credits, they remain liable, jointly and severally, to the United States in the amount of $1,403,527.46, plus statutory additions and interest accruing from and after June 30, 2022. That amount, the Government contends, will be decreased by any distributions received from the bankruptcy estate after July 5, 2022.

As for Count II, the Government's Amended Complaint alleges that on August 18, 2011, before most of the tax assessments at issue were made but after the Mikhovs had been notified that the Internal Revenue Service had opened an investigation into their 2008 and 2009 tax returns, Margaret Culberson conveyed the Property to One Plus Two, LLC, an entity owned 99.9% by Mr. Mikhov and 0.1% by his sister, Ellena Mikhov Kayyod. On May 10, 2016, One Plus Two LLC conveyed full title to the Property by Warranty Deed to Ms. Kayyod. The Government has averred, based on information and belief, that the transfer of property from One Plus Two to Ms. Kayyod on May 10, 2016,

6

was directed by Mr. Mikhov and/or Mrs. Mikhov. On January 12, 2018, Ms. Kayyod conveyed the Property by Quitclaim Deed to C&R for zero net dollars; this transfer was made for the stated consideration of $100,000, but all closing costs (including $5,865.66 to Hamilton County, Indiana, to pay Spring 2016 and delinquent property taxes) were paid from that $100,000, making the actual amount paid to the seller the amount of $92,472.50. Mr. Mikhov then directed payment of $92,472.50 to a bank account in the name of Two Plus One, LLC, which was another company of which he was the owner/president. Over the course of the ensuing four months, the $92,472.50 was distributed through a combination of withdrawals executed by Mrs. Mikhov and transfers to or for the benefit of other entities controlled by the Mikhovs. Moreover, One Plus Two reported the sale in the amount of only $10,000, claiming a capital loss corresponding to that amount that passed through to the Mikhovs' personal tax return. Thus, according to the Government, the Mikhovs' federal tax liens attach to the Property, either because the liens had attached to it when it was held by Mr. Mikhov's nominee, One Plus Two LLC, or, in the alternative, because the initial acquisition of the property by One Plus Two was made with funds supplied by Mikhov, making all subsequent transfers of the property fraudulent. The Government therefore requests a declaration under 26 U.S.C. § 7402 that the Mikhovs' tax liens attach to the Property.

### III. DISCUSSION AND DECISION

We begin our analysis of the parties' respective motions mindful of the following controlling legal principles. First, "[t]he jurisdiction of the bankruptcy courts, like that of

7

other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "Title 28 U.S.C. § 1334(b) provides that 'the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" *Id.* "The district courts may, in turn, refer 'any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district.'" *Id.* (quoting 28 U.S.C. § 157(a)). "The predicate for the referral power is the bedrock principle that the district courts have jurisdiction over bankruptcy cases and proceedings; the bankruptcy court's jurisdiction over such matters is purely and solely derivative of the district court's jurisdiction." *In re Curtis*, 571 B.R. 441, 445 (B.A.P. 9th Cir. 2017).

### A. GOVERNMENT'S MOTION TO DECLARE THAT NOTICE OF REMOVAL IS VOID

The Mikhovs have attempted to remove this action to the Bankruptcy Court, pursuant to 28 U.S.C. § 1452(a), but "numerous trial courts have concluded that 28 U.S.C. § 1452 does not permit removal of cases from federal district court to bankruptcy court." *Curtis*, 571 B.R. at 445 (collecting cases); *see, e.g., Wellness Int'l Network v. J.P. Morgan Chase Bank, N.A. (In re Sharif)*, 407 B.R. 316 (Bankr. N.D. Ill. 2009). "There are virtually no published decisions to the contrary."[3] *Curtis*, 571 B.R. at 445. "Courts concluding that 28

---

[3] In *Curtis*, the Ninth Circuit noted that the only arguable exceptions to this rule are *Philadelphia Gold Corp. v. Fauzio (In re Philadephia Gold Corp.)*, 56 B.R. 87 (Bankr. E.D. Pa. 1985) and *MATV–Cable Satellite, Inc. v. Phoenix Leasing, Inc.*, 159 B.R. 56 (Bankr. S.D. Fla. 1993). *Curtis*, 571 B.R. at 445. In *Philadelphia Gold*, the Bankruptcy Court permitted a debtor in a civil action pending in the U.S. District Court for the Eastern District of Pennsylvania to remove that action to the bankruptcy court in the same district. *Id.* at 448 (citing *Philadelphia Gold*, 56 B.R. at 89−90). "Although the bankruptcy court examined 28 U.S.C. § 1452, its analysis was

8

U.S.C. § 1452 does not permit removal from a federal district court directly to the bankruptcy court cite two reasons for that holding: first, the plain language of the statute does not support a contrary conclusion; and second, to interpret the bankruptcy removal statute as [the Mikhovs] urge would thwart the district courts' power to refer matters to bankruptcy courts." *Id.* We adopt that reasoning here as well.

The plain language of 28 U.S.C. § 1452 does not authorize removal to a bankruptcy court; rather, it authorizes removal "to the district court for the district where such civil action is pending," if the district court has jurisdiction under 28 U.S.C. § 1334. *Id.* Indeed, "it is illogical to interpret the bankruptcy removal statute to authorize removal *from* a district court *to* the district court in the same district." *Id.* (citing *Mitchell v. Fukuoka Daiei Hawks Baseball Club (In re Mitchell)*, 206 B.R. 204, 209 (Bankr. C.D. Cal. 1997) ("It violates the plain language of 28 U.S.C. § 1452(a) to say that an action can be removed 'to district court' when it is already pending in district court, because the words 'to district court' by necessity involve the concept of bringing the action to district court from some other forum."). "Numerous cases have held, correctly, that a reading of 28 U.S.C. § 1452 that would permit a matter to be removed from a district court to a

---

perfunctory and did not take into account the plain language of the statute or the constitutional concerns raised by its interpretation." *Id.* As many other courts before us, we find this decision and its analysis unpersuasive. *See Thomas Steel Corp. v. Bethlehem Rebar Industries, Inc.*, 101 B.R. 16, 19−20 (Bankr. N.D. Ill. 1989) (explicitly rejecting *Philadelphia Gold* and its analysis). "Without making a definitive ruling on the issue of whether 28 U.S.C. § 1452 authorized the removal of a case from federal district court," the district court in *MATV-Cable Satellite* denied a motion to strike a notice of removal to the bankruptcy court "on practicality grounds." *Curtis*, 571 B.R. at 448. "Accordingly, *MATV–Cable Satellite* does not provide a solid basis for interpreting 28 U.S.C. § 1452 to authorize removal from a federal district court to bankruptcy court, as urged by Debtors." *Id.*

9

bankruptcy court would impermissibly undermine the district court's power to refer matters to the bankruptcy court (or to withdraw the reference)." *Id.* at 447. This referral power reflects "the Article III supervision that Congress intended as a remedy for the defects found by the Supreme Court in *Marathon*." *Thomas Steel Corp. v. Bethlehem Rebar Indus., Inc.*, 101 B.R. 16, 19−20 (Bankr. N.D. Ill. 1989) (citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (holding the jurisdictional grant of the Bankruptcy Reform Act of 1978 violated the Constitution's separation of powers doctrine insofar as it purported to permit a bankruptcy court, which was not a court established under Article III of the Constitution and lacked the essential attributes of an Article III court, to exercise the judicial power of the United States)).

"[W]e pause here to emphasize a fundamental and crucial point." *Curtis*, 571 B.R. at 447. "The predicate for the referral power is the bedrock principle that the district courts have jurisdiction over bankruptcy cases and proceedings; the bankruptcy court's jurisdiction over such matters is purely and solely derivative of the district court's jurisdiction." *Id.* "And the bankruptcy court's power to hear, or to hear and determine, as the case may be, bankruptcy cases and proceedings is entirely dependent upon the referral by the district court." *Id.* "Any interpretation of a statute that would imply that the bankruptcy courts had jurisdiction of bankruptcy cases and proceedings separate and independent from, or even co-equal to, the jurisdiction granted the Article III courts, or that would interfere with the Article III courts' exercise of that jurisdiction and judicial power through the system of referral to the bankruptcy courts, or that, as here, would permit bankruptcy courts to dispose of matters originating in the district courts in

10

apparent derogation of the power of those courts to control their own proceedings, would be, for the reasons described above, a constitutional non-starter." *Id.* at 447−48. For these reasons, we grant the Government's motion declaring that the Mikhovs' Notice of Removal to the Bankruptcy Court is void.

### B. DEFENDANTS' MOTION TO CONFIRM REFERRAL OF PROCEEDING TO BANKRUPTCY COURT OR, IN THE ALTERNATIVE, TO REFER PROCEEDING TO BRANKRUPTCY COURT

The Mikhovs also seek an order transferring this case to the Bankruptcy Court, arguing that: "as with every case and proceeding that arises under or relates to the Bankruptcy Code, this Court has already referred the proceeding initiated by Plaintiff's Complaint to the Bankruptcy Court," and, in the alternative, if this proceeding has not already been automatically referred to the Bankruptcy Court, the Mikhovs request that we now do so because, they say, this proceeding both "arises in" and "arises under" the Bankruptcy Code.[4] Docket No. 10, at 10. The Mikhovs' first argument invokes Local Rule 83-8(a) (mistakenly referenced in the motion as Local Rule 83-3(a)), which provides:

> Consistent with 28 U.S.C. § 157(a), all cases and proceedings arising under Title 11 of the United States Code, or relating to a case under Title 11 of the

---

4 In addition to their argument that this proceeding has already been referred, the Mikhovs contend that "[e]ven if the referral of jurisdiction to the Bankruptcy Court were withdrawn (which it has not been) or challenged in any way," they "would still have the right to remove this proceeding to the Bankruptcy Court." Docket No. 10, at 11. For all the reasons previously explained we reject this argument; the proceeding has not already been referred to the Bankruptcy Court, and there is no such right to removal *from* this court *to* this court's Bankruptcy Court.

>United States Code, are referred to the district's bankruptcy court. This includes all cases removed under 28 U.S.C. §§ 1441(a) or 1452.

The Mikhovs contend that this referral, "which is automatic and requires no action by the Court, has been reaffirmed time and again by this Court." Docket No. 10, at 10; *see, e.g., Gibson v. Tucker (In re G & S Livestock Co.)*, 478 B.R. 906, 911 n.6 (S.D. Ind. 2012) ("Cases in this District are automatically referred to the United States Bankruptcy Court for the Southern District of Indiana pursuant to Local Rule 83-8."); *GolsonDunlap v. HSBC Capital (USA), Inc. (In re Garrison)*, 2016 WL 454807, at *2 (S.D. Ind. Feb. 5, 2016) ("Congress has granted the district courts authority to refer cases arising under Title 11, proceedings arising in a Title 11 case, or those that relate to a case under Title 11 to the bankruptcy court for the district. In this district, Local Rule 83-8 provides for the automatic referral of all proceedings arising under Chapter 11, consistent with § 157(a)."). "Based on this Court's automatic referral of proceedings such as the one initiated by Plaintiff to the Bankruptcy Court," the Mikhovs argue, "this Court should enter an Order confirming that the proceeding initiated by the Complaint has been referred to the Bankruptcy Court." Docket No. 10, at 12.

The Mikhovs' reliance on this Local rule is entirely misplaced. The case at bar is not a matter arising under Title 11, as we have previously made clear. Thus, it was not automatically referred to the Bankruptcy Court nor will it be. Obviously, if it had been, there would be no need for the Mikhovs to request confirmation of that fact by the court. In truth of fact, this matter is prosecuted under Title 26, U.S.C., to wit, the Internal Revenue Code. The Mikhovs' apparent intention to raise their bankruptcy discharge as a

12

defense to their ongoing tax liability dispute does not alter the statutory basis for this lawsuit. Neither should it be transferred to the Bankruptcy Court on the grounds that it "arises under" and "arises in" the Bankruptcy Code.

"Congress delineated three types of bankruptcy proceedings: those (1) 'arising under title 11,' (2) 'arising in' a title 11 case, and (3) 'related to a case under title 11.'" *In re Ortiz*, 665 F.3d 906, 911 (7th Cir. 2011) (quoting 28 U.S.C. § 157(a)). The Mikhovs have not argued that this matter is "related to a case under title 11," so we will address only whether it is one that "arises in" or "arises under" Title 11. *See* 28 U.S.C. § 157(a). "Congress permits bankruptcy judges to 'hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11.'" *Ortiz*, 665 F.3d at 911 (citing 28 U.S.C. § 157(b)(1)). "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011). The Mikhovs claim that the Government's Complaint seeks a "determination as to the dischargeability of [a] particular debt[]" and thus is a "core proceeding," as defined in 28 U.S.C. §157(b)(2)(I), characterizing the Bankruptcy's discharge of their debt as a proceeding that "both 'arises in' a bankruptcy case and 'arises under' the Bankruptcy Code because the Bankruptcy Code both provides for Debtors' discharge and Plaintiff's alleged right to except its debt from such discharge." Docket No. 10, at 15.

Whether this case "arises under" Title 11 depends on whether it relates to "a right 'created or determined by a statutory provision of title 11.'" *In re Repository Tech., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010) (quoting *CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559, 565

13

(Bankr. N.D. Ill. 2007)). The Government "does not dispute that free-standing declaratory suits to determine dischargeability of a debt commenced under § 523(c) and/or Bankruptcy Rule 4007 'arise under title 11.'" Docket No. 12, at 4. Rather, the Government stresses that its cause of action against the Mikhovs "does not 'arise under title 11'; it arises under title 26 (the Internal Revenue Code), specifically 26 U.S.C. § 7402." *Id.* at 5. We agree with the Government's argument and reiterate that the Mikhovs' stated intention to raise their bankruptcy discharge as a defense to ongoing tax liability does not alter the nature of the proceeding before us, nor does it transform this proceeding into a matter "arising under" Title 11, such that the Bankruptcy Court would possess jurisdiction.

The Mikhovs' contention that this matter "arises in" bankruptcy—a category "defined generally as 'administrative matters that arise *only* in bankruptcy cases'"—is equally unpersuasive. *Ortiz*, 665 F.3d at 911 (quoting *Repository Tech.*, 601 F.3d at 719). Indeed, a proceeding "arises in" bankruptcy if it "would have 'no existence outside of the bankruptcy,' and [is] thus deemed 'arising in' a bankruptcy case because the claim[] [is] 'predicated on the defendants' participation in' the debtors' bankruptcies." *Id.* (quoting *Repository Tech.*, 601 F.3d at 719); *see also Grausz v. Englander*, 321 F.3d 467, 471–72 (4th Cir. 2003) (finding a debtor's claim against a law firm for malpractice in his bankruptcy within "arising in" jurisdiction because it would have "no practical existence but for the bankruptcy"). Claims "arising in" bankruptcy include "such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." *Repository Tech.*, 601 F.3d at 719 (citation omitted).

14

Thus, "[i]ts domain is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor." *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994).

Here, the authority to reduce tax assessments to judgments—specifically, the authority granted by 26 U.S.C. § 7402—exists irrespective of whether a taxpayer has been through bankruptcy. We reiterate: the Mikhovs' intention to raise a discharge defense does not transform or alter the nature of this case, nor does it create jurisdiction within the Bankruptcy Court. Indeed, the Mikhovs have cited not a single case in which a district court has referred a suit to the bankruptcy court to reduce to judgment tax liabilities involving whether such liabilities were discharged. Conversely, the Government has cited numerous cases arising in various district courts seeking a tax judgment that involves the issue of whether the tax liabilities were dischargeable. *See, e.g., United States v. Stanley*, 595 Fed. App'x 314, 318 (5th Cir. 2014); *United States v. Storey*, 640 F.3d 739, 741 (6th Cir. 2011); *United States v. Coney*, 689 F.3d 365, 370 (5th Cir. 2012); *United States v. Clayton*, 465 B.R. 72 (M.D.N.C. 2011); *United States v. Hall*, 2002 WL 471800 (S.D. Ind. Feb. 12, 2002).

We further hold that the interests of judicial efficiency are better served by our retention of the instant action on our docket. *In re Varner*, the bankruptcy court declined to reopen a case to permit an adversary complaint by a debtor where the federal Government had brought suit in the district court claiming that the discharge exception applied as part of its complaint. There, the court observed:

15

> Forcing either party to litigate the dischargeability issue in bankruptcy court, only to present that declaratory judgment to district court, is a waste of resources. District court has original jurisdiction of bankruptcy matters and can review this court's decisions. Allowing it to decide the dischargeability directly makes more sense than piecemeal litigation.

*In re Varner*, 2021 WL 5312469, *2 (Bankr. N.D. Ohio Nov. 15, 2021).[5] We agree.

Finally, as the Government notes, the Bankruptcy Court would not have jurisdiction over the Government's additional claim against Defendant C&R, which involves property that is not part of the "bankruptcy estate and is titled in the name of a company which is not a debtor (and the shares of such company are also titled in the name of a non-debtor), so the bankruptcy court would thus not have subject matter jurisdiction over any issue with regard to that property." Docket No. 20, at 2−3. "Nor could the property be brought into the estate via a fraudulent transfer claim by the Chapter 7 trustee because the period of limitations to do that has expired." *Id.* at 3 (citing 11 U.S.C. § 546). The District Court possesses the requisite jurisdiction to adjudicate all the claims here presented, while serious questions exist concerning the Bankruptcy Court's jurisdiction to hear the entirety of all the asserted claims. Thus, we shall retain responsibility for managing this litigation without referring it to the Bankruptcy Court. *See Kerger v. United States*, 2020 WL 4570770, at *3 (N.D. Ohio, July 21, 2020). For all these reasons, we deny Defendants'

---

[5] Moreover, because the Bankruptcy Court could at most issue a declaratory judgment, the Government argues that "its jurisdiction would be questionable in light of the prohibition in the Declaratory Judgments Act on declaratory judgments involving federal taxes. Significantly, the same legislation that enacted the modern bankruptcy code in 1978 amended the Declaratory Judgments Act to make an exception to the tax exclusion clause for § 505 of the Bankruptcy Code but did not make such an exception for § 523 (dischargeability)." Docket No. 20, at 6 n.2.

16

Motion to Confirm Referral of Proceeding to Bankruptcy Court or, in the Alternative, to Refer Proceeding to Bankruptcy Court.

## IV.    CONCLUSION

Accordingly, we **GRANT** the Government's Motion to Declare that Notice of Removal is Void [Docket No. 9] and **DENY** Defendants Motion to Confirm Referral of Proceeding to Bankruptcy Court or, in the Alternative, to Refer Proceeding to Bankruptcy Court [Docket No. 10].[6]

IT IS SO ORDERED.

Date:    11/21/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jason R. Burke
BLACKWELL, BURKE & RAMSEY, P.C.
jburke@bbrlawpc.com

Amy Lynn Elson
Blackwell, Burke, & Ramsey P.C.
aelson@bbrlawpc.com

Sarah L. Fowler
Blackwell, Burke & Ramsey, P.C.
sfowler@bbrlawpc.com

---

[6] As previously mentioned, we partially **DENY** Defendants' Motion filed on November 9, 2022 [Docket No. 30] as it pertains to the issues addressed in this order. That motion remains pending as to the Defendants' request that Count II of the Amended Complaint be dismissed, and nothing in this order shall be construed to affect the standard briefing deadlines set out in Local Rule 7-1(c)(3) for the Motion to Dismiss portion of Defendants' November 9th Motion.

Bradley A. Sarnell
U.S. DEPARTMENT OF JUSTICE - TAX DIVISION (Washington DC)
bradley.a.sarnell@usdoj.gov